# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN WOJCIECHOWSKI and ANNE DALVET, as CO-ADMINISTRATORS FOR THE ESTATE OF ELEANOR S. MURPHY, Plaintiffs | : : : : : : | No. 3:17cv655 (Judge Munley) |
| v. | : : : | |
| MARLENE MUSIAL, MELINDA CUPPLES and WILLIAM CUPPLES, Defendants | : : : | |

## **MEMORANDUM**

Before the court for disposition is the defendants' motion in limine to preclude testimony of plaintiffs' expert at trial. The parties have briefed their respective positions and the matter is ripe for disposition.

**Background**

Decedent Eleanor Murphy passed away on February 4, 2016. (Doc 1, Compl. ¶ 2). Shortly after her death, defendants Marlene Musial, Melinda Cupples and Williams Cupples, all residents of Delaware, traveled to decedent's home in Blythe Township, Schuylkill County, PA. (Id. ¶¶ 6-8, 16).

Plaintiff Anne Dalvet was also at the residence and in her presence, the defendants went through the decedent's home looking for valuables that had been owned by the decedent. (Id. ¶ 17). While searching, Defendant Marlene

Musial removed two fire boxes filled with tightly bound $50 and $100 bills. (Id. ¶ 19). The money was not counted at the time, but Plaintiff Dalvet estimates that the amount of cash was in excess of $100,000.00. (Id. ¶¶ 19-20).

The three defendants left the decedent's house with the boxes of cash. (Id. ¶ 22). In addition to the cash, the defendants also took two curio cabinets from the house. (Id. ¶ 23). The cabinets were filled with antiques and collectibles, which plaintiff estimates to be worth in excess of $75,000. (Id.) Several weeks later Defendant Marlene Musial and Plaintiff Anne Dalvet were selected as co-administrators of the decedent's estate. (Id. ¶ 25).

In a meeting between the estate lawyer and the co-administrators, Musial failed to mention the items and cash that she and the others had already removed from the decedent's residence. (Id. ¶ 28). Plaintiff Dalvet subsequently informed the attorney of the items and cash that defendants had removed from the house. (Id. ¶ 29). She also confronted Defendant Marlene Musial about them. (Id. ¶ 30). Musial informed Plaintiff Dalvet that all she had to return to the estate was $250.00 in quarters and that plaintiff should not say anything to the attorney about the other items and cash. (Id. ¶ 31).

Subsequently, the estate lawyer confronted Musial, who then admitted having the cash and indicated she was "sitting on it" to ensure that estate bills were paid. (Id. ¶ 32). Later, Marlene Musial indicated that she and the other

defendants had taken a few thousand dollars, and she deposited a substantial sum of cash into the estate's bank account. (Id. ¶ 50).

Marlene Musial was eventually removed as co-administrator of the estate. (Id. ¶ 35). Plaintiffs aver that defendants made numerous purchases and other transactions with the assets removed from the decedent's residence. (Id. ¶ 34). Based on these facts, the plaintiffs instituted the instant case by filing a two-count complaint. The complaint alleges: Count 1, Conversion against all the defendants (Id. ¶¶ 36-42); and Count 2, Fraud against Marlene Musial. (Id. ¶¶ 43-57). Plaintiff seeks damages in excess of $100,000, pre- and post-judgment interest, punitive damages and attorney's fees.

The parties have proceeded through discovery and a pretrial conference is scheduled. In conformity with our motion in limine rule, the defendants have filed a motion in limine, brining the case to its present posture.

**Jurisdiction**

We have jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiffs are citizens of Pennsylvania and the decedent's estate is filed in Pennsylvania. (Doc. 1, Compl. ¶¶ 10-11). The defendants are citizens of Delaware. (Id. at ¶12). Additionally, plaintiffs allege that the amount in controversy exceeds $75,000. (Id. ¶ 13).

**Discussion**

3

In preparation for trial, plaintiffs retained the services of Nathan R. Lipton, Certified Fraud Examiner ("CFE"). He examined the case to determine the amount of money contained in the fire boxes the plaintiffs found in the house. The boxes were recovered, however, the money had been removed. Lipton concluded that the boxes, based upon their size, "could have conservatively contained as much as $373,160 in paper currency[.]" (Doc. 27-1, Lipton Report at 7). Defendants seek to bar Lipton's expert testimony.

The law provides as follows with regard to expert witnesses:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Defendant raises both procedural and substantive issues with respect to Lipton's testimony. We will address these issues separately.

**I. Procedural Issues**

First, defendants argue that Lipton should be precluded from testifying, or that the pretrial conference should be cancelled and rescheduled, because they have not had the opportunity to depose Lipton. Defense counsel indicates that starting on April 12, 2019, he contacted plaintiffs' counsel several times to

4

schedule Lipton's deposition. Plaintiffs' counsel has not cooperated in arranging the deposition of the expert witness therefore the expert's testimony should be precluded according to the defendants.

Plaintiffs, however, indicate that they provided defendants with Lipton's expert report on December 19, 2018. Defendants did not request to depose Lipton until nearly four months later in April 2019. Plaintiffs point out that in the joint case management plan, the parties indicated that expert discovery should be concluded forty-five (45) days after the expert reports were submitted. (Doc. 19, ¶ 6.9). Thus, defendants tried to initiate this discovery more than a month after they agreed discovery should be completed. Because the defendants were so slow to act in seeking the deposition of the expert, we will not preclude the expert's testimony based upon this procedural argument.[1]

Additionally, defense counsel complain that plaintiffs' attorneys failed to cooperate with scheduling the deposition even after they contacted them numerous times. Plaintiffs' counsel has their own version of what transpired, arguing that defense counsel never followed up with them to schedule the deposition. (Doc. 28, Pls'. brief at 4-5). Regardless of which party provided the accurate factual scenario, if defendants were having problems with discovery, the proper manner of proceeding would be to contact the court for a discovery

---

[1] Defendants may potentially depose the witness after the pretrial conference.

conference. (Doc. 21, Case Management Order, including discovery dispute rule). This they did not do. Accordingly, we do not find this argument to be a basis for precluding the expert from testifying.

**II. Substantive Argument**

Defendants next argue that the expert should be precluded because his opinion is based upon the state of mind and pure speculation of various witnesses. Defendants assert that the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. We disagree.

The expert report clearly sets forth the basis of his conclusion. He examined the actual boxes in question. (Doc. 27-1, at 3). To determine the amount of cash in each box, he indicates that he used methodology requested by Plaintiff Wojciechowski and plaintiff's counsel regarding the number of bills of each various denomination. (Id.) Specifically, he based his computations on the assumption that the currency was made up equally of ten dollar bills, twenty dollar bills and fifty dollar bills. (Id.) These assumptions appear to be based on Plaintiff Dalvet's observation of the contents of the boxes before the money was removed. (Id. at 3-4). Because of the unique facts of this case, we find that this methodology is acceptable. Plaintiff Dalvet observed the money in the boxes and certain conclusions were made about the quantity of each denomination.

The evidence will not be precluded. Defense counsel can address these issues through vigorous cross-examination and argument to the jury.

**Conclusion**

Based on the above reasoning, the defendants' motion in limine will be denied. An appropriate order follows.

**Date: May 30, 2019**  s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**